## GOLDSMITH METAL LATH CO. v. TRUSCON STEEL CO.

Circuit Court of Appeals, Sixth Circuit.
December 15, 1928.

Nos. 4792, 4796, 4979.

Walter F. Murray, of Cincinnati, Ohio, for plaintiff.

W. F. Guthrie, of Youngstown, Ohio, for defendant.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. These appeals involve the Golding patent, No. 1,095,204, and the Goldsmith patent, No. 1,168,627, relating to re-enforced concrete beam and floor construction. The original decree held Claim 5 of the Golding patent invalid and Claim 7 of the Goldsmith patent valid and infringed. The decree entered in a second action (based on defendants later construction) held Claim 5 of Golding invalid and Claim 7 of Goldsmith valid but not infringed. Plaintiff assigns error to the refusal of the court to hold Claims 4 and 5 of Golding and Claims 1, 3, and 5 of Goldsmith valid and infringed, and Claim 7 of Goldsmith infringed by defendant's changed construction. Defendant assigns error to the holding of Claim 7 of Goldsmith valid and infringed by its original construction.

Golding's method of constructing concrete floors for fireproof buildings, as specified in Claims 4 and 5[1] of his patent, was to fasten upon centering, constructed between permanent girders, rows of open metal work to serve as laths for plastering the ceiling below, turn the edges of the metal up, invertedly place on each row of metal between the upturned edges a row of U-shaped tile the distance from the adjacent parallel row of the desired width of a concrete beam, pour through caps at the top of the tiles and also between the rows enough concrete to cover the metal, and after the concrete was set to close the caps and fill the space between and cover the rows of tiles with concrete. When this was done, and the concrete set, the centering was removed. The result was the concrete between the tiles became the supporting beams for the floor slab above, and the ends of the metal beneath were firmly embedded and held in the concrete beams.

There was nothing new in Golding's method of constructing the beams and floor slabs. Nor was it new to use beams as supports for the laths. Some of the prior construction consisted of steel beams fireproofed by terra cotta tile or concrete, as in Lazell 560,587 and Rapp 640,809, in both of which the lath was supported on a permanent metal beam, but in neither of which was there the problem of providing an anchorage for the lath in a beam that was to be formed nor a combination of hollow box and open network between. Kahn contemplated concrete beams in his patent No. 852,230; but he used a continuous sheet of metal extending under the tiles and covering the entire floor, and depended entirely upon the setting of the concrete around the strands of the metal to hold it in place. In his patent No. 1,074,953, wires were thrust up through holes in the metal so that when the concrete set around these wires there would be an additional anchoring of the laths to the beams. His patent No. 1,073,906 had a finger struck from the bottom of the side of the mold which formed a hook for securing sheets of reticulated metal to the lower edges of the joist, the sheets forming metal laths for holding the plaster ceiling to the lower side of the floor structure. In all the Kahn patents there was a continuous sheet of metal covering the centering and passing along and across the rows of metal domes. In Forsyth, No. 1,038,551, the laths interlocked between the tile rows forming an inverted trough; but the object of this was to hold the laths in alignment. It formed no anchorage of the laths to the beams.

Before Golding it was apparent in the art that the setting of the concrete about the strands of the metal did not give to it a sufficient anchorage. Expedients were resorted to to utilize more completely the stability of the beams for this purpose. Kahn and others succeeded in doing it, but not in a way to suggest the simple method which Golding thought of, involving the separation of the continuous strip of lath across the beams and centering into separate units, each associated with its box and having this efficient means of insuring beam anchorage.

---

[1] Claim 5 relates particularly to the element, included in Claim 4, of embedding the ends of the metal or laths in the concrete beams. It reads: "A reinforcement for hollow concrete floors and ceilings, consisting of hollow boxes having bottoms of open work metal, the open work edges of which bottoms are extended upward and outward at the sides of the boxes for embedding in and interlocking with the concrete of the beams when the latter are formed in the spaces between the boxes, substantially as specified."

His conception proved to be of great utility, and amounted, we think, to invention. As defendant's original construction used it, there was infringement of Claim 5. Whether Claim 4 was valid and infringed we need not determine.

In thus sustaining Claim 5 of Golding we have attributed to him part at least of the meritorious thought which led the District Court to sustain Claim 7 of Goldsmith. We think it unnecessary to consider this Goldsmith patent. For past infringement by defendant's first form plaintiff's damages are the same under Golding as under Goldsmith or under both. There seems no reason to anticipate any further infringement; if there were, it would be fully prevented by an injunction under the broader claim of Golding —save for possibilities during the interval between the expiration dates of the two patents. This is too remote to require present attention. The decree dismissing the bill on the Goldsmith patent should be without prejudice to any future suit claiming infringement by any construction not equivalent to defendant's changed construction now to be considered.

This changed construction is to be examined in connection with plaintiff's two patents, taking as typical of the claims relied upon Claim 5 of Golding and Claim 7 of Goldsmith. All the elements of Goldsmith, with the possible exception of his method of anchoring the laths to the beams, were old, and even if there was invention in his combination, a question that we do not decide, defendant did not infringe unless it used the same or equivalent elements in an equivalent operating relation to one another. We have referred to Golding's method of anchoring the laths to the beams. Goldsmith used a similar one. He turned up the ends of his laths as perpendicularly as possible and brought them in close to the sides of the dome. The domes were forced in between the upturned ends and held rigidly in place. Instead of false flooring he used the customary false beams upon which the ends of the laths rested. In defendant's later construction the ends of the laths also rest on false beams, and in ribs near the ends of each lath there are diagonal cuts forming tongues that are turned up. Into these cuts the opposite edges of the down-turned dome are forced. The tongue serves to brace the dome in the cut. It is said for plaintiff that it also serves to fasten the laths to the beams. What it really does, it seems to us, is to fasten them securely to the dome, which is held in place by the beams. The tongue, operating with the concrete, perhaps assists in holding the dome; but the laths are anchored to the dome instead of in the concrete as in Golding and Goldsmith. There is in this difference, we think, a lack of equivalency to Golding and Goldsmith as limited by the crowded condition of the art. We accordingly hold Claim 5 of the Golding patent valid and infringed by defendant's first construction, but not infringed by its second construction, and we find it unnecessary to determine whether Claim 4 of Golding or the claims of Goldsmith are valid, since if valid they are not infringed by defendant's present construction.

The decrees of the District Court will be so modified, and the cases are remanded for the entry of such decrees.